**David R. YESKOO, Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 93–238C.

United States Court of Federal Claims.

Jan. 31, 1996.

Richard C. Yeskoo, New York City, for plaintiff.

Virginia K. Demarchi, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., for defendant.

## OPINION

HORN, Judge.

■ This case comes before the court on the defendant's motion to dismiss Count II of plaintiff's complaint, pursuant to Rule 12 of the Rules of the United States Court of Federal Claims (RCFC), defendant's motion for summary judgment on Count I of plaintiff's complaint, pursuant to RCFC 56, and plaintiff's cross-motion for summary judgment on both Counts I and II, pursuant to RCFC 56.[1] Plaintiff, David R. Yeskoo, an employee at the Internal Revenue Service ("IRS"), filed a two count complaint in this court following the denial of an appeal to the United States General Accounting Office ("GAO"). Plaintiff's complaint seeks reimbursement for relocation expenses incurred in Mr. Yeskoo's transfer to a new IRS assignment. The relocation expenses allegedly incurred by the plaintiff for the sale of his residence total $38,823.75, however, one-third of that amount was withheld by the defendant. Plaintiff's complaint seeks $12,941.25, which totals the withheld portion of plaintiff's relocation expenses. In support of his claim that he is owed the entire amount of his relocation expenses, plaintiff relies on 5

U.S.C. § 5724c (1988) and the Federal Travel Regulations implementing that statute, 41 C.F.R. chapter 302 et seq. (1993).

In response to plaintiff's complaint, defendant filed an answer and, subsequently, filed a motion to dismiss Count II of plaintiff's complaint, together with a motion for summary judgment on Count I of plaintiff's complaint. Defendant relies upon 5 U.S.C. § 5724a (1988), as well as the implementing regulations found at 41 C.F.R. chapter 302, et seq. to support its claim that plaintiff is not entitled to the full amount of the relocation expenses and that the one-third withholding was proper. Defendant argues that plaintiff is not entitled to total reimbursement of his transfer expenses because plaintiff's father was on the deed to plaintiff's primary residence at the time plaintiff received his transfer notification. Subsequently, plaintiff filed an opposition to defendant's motions and a cross-motion for summary judgment on both Counts I and II of the complaint.

## FACTS

The material facts before this court are undisputed by the parties. On or about March 8, 1990, plaintiff, Mr. David R. Yeskoo, an employee at the IRS, received notification of his transfer from the IRS Office in Fairfax, Virginia, to the IRS Office in Philadelphia, Pennsylvania. In accordance with statutory authority, the IRS contracted with Associates Management Company, Inc. ("AMC") to provide relocation services to plaintiff and others in connection with employment transfers. At the time plaintiff received notification of his transfer, the deed on plaintiff's home listed the plaintiff, David Yeskoo, his wife, Marcia Yeskoo, and his father, Richard E. Yeskoo, as owners of plaintiff's Virginia residence. The contract under which the IRS obtained AMC's relocation services, stated: "If title is held jointly with a person other than an immediate family member, the USSS [United States Secret Service] will pay only a pro rata share of the

---

1. In general, the rules of this court are closely patterned on the Federal Rules of Civil Procedure. Therefore, precedent under the Federal Rules of Civil Procedure is relevant to interpreting the rules of this court, including Rule 56.

See Jay v. Sec'y DHHS, 998 F.2d 979, 982 (Fed. Cir.1993); Imperial Van Lines Int'l Inc. v. United States, 821 F.2d 634, 637 (Fed.Cir.1987); Lichtefeld–Massaro, Inc. v. United States, 17 Cl.Ct. 67, 70 (1989).

fee. The employee or other owner will be responsible for payment of the balance of the fee."[2]

According to the plaintiff, when he and his wife bought their home in Chantilly, Virginia, the lender required that plaintiff's father, Richard Yeskoo, co-sign the note in order for plaintiff to qualify for a loan on the home. As a condition of the mortgage, the lender also required that Richard Yeskoo, plaintiff's father, be placed on the deed as a listed, partial owner of the property. Despite these facts, plaintiff alleges that his father had no control over the property, provided no funds for the purchase of the property, and has not participated in any subsequent payments on the property.

Plaintiff asserts that AMC, the relocation service, informed him that the split fee would not be withheld if his father was removed from the deed prior to the sale of the property.[3] On May 25, 1990, Richard Yeskoo was divested of all legal interest in the Virginia property by a transfer of all interest to plaintiff and his wife, as tenants by the entirety, by gift. Plaintiff also claims that at the closing on June 18, 1990, he was informed that because his father was listed on the deed at the time he was notified of his transfer, he would not receive full relocation benefits and that the split fee would be withheld. Plaintiff and his wife signed a contract for the sale of their Virginia residence on June 18, 1990. On the same date, plaintiff and his wife signed a fee agreement with AMC, whereby Mr. Yeskoo acknowledged under protest that he would not be reimbursed for 33 percent of the total fee of the $38,823.75 charged by AMC in connection with the sale of the property. As a result, $12,941.25 was withheld from the amount paid to plaintiff for the sale of the Virginia residence.

On October 31, 1990, plaintiff submitted a voucher to the IRS for the $12,941.25 withheld in the real estate transaction. Payment was denied. Plaintiff appealed the IRS's denial of his claim to the GAO. On April 16, 1991, the Claims Group of the GAO denied Yeskoo's appeal. The GAO stated, in pertinent part, as follows:

The record shows your agency denied reimbursement of one-third ($12,941.25) of the relocation services company fee, incident to the sale of your residence, because at the time you first received notice of the transfer, the title to the house was in the name of you, your wife, and your father, and your father was not a member of your immediate family.

You state that your father's name was on the deed only because you needed him to co-sign for the loan. You are claiming reimbursement for the portion of the relocation service company fee that was disallowed on the basis that your father was a member of your immediate family, and also because he had no legal interest in the property on June 18, 1990, when the sales contract with the relocation company was executed. His name was removed from the deed on June 5, 1990. You also contend that it is not the intent of the regulations to apply to this situation, that the regulations are discriminatory, and that misrepresentations were made by the relocation company that the split fee would not be withheld if your father's name was removed from the deed prior to the sale of the property to the company.

Payment of claims may only be made as authorized by statute and regulations. The provisions of 41 C.F.R. 302–6.1(c) state, in pertinent part regarding title requirements under which allowances are payable, that "The title to the residence or dwelling at the old.... official station,.... is in the name of the employee alone, or in the joint names of the employee and one or more members of his/her immediate family, or solely in the name of one or more members of his/her immediate family. For an employee to be eligible for reim-

2. The United States Secret Service (USSS) appears to have been the original government agency to contract with AMC. The contract used by the IRS apparently is the same one used by the USSS and includes the same provisions.

3. It is unclear from the record whether AMC had the requisite authority to make representations on behalf of the IRS, however, even if authorized but inaccurate information was received by plaintiff, plaintiff remains bound by and may only receive expenses authorized by the statute and the regulations in effect at the relevant time.

bursement of the costs of selling a dwelling.... at the old official station, the employee's interest in the property must have been acquired prior to the date the employee was first definitely informed of his/her transfer to the new official station." In Comptroller General decision B–233992, dated May 16, 1989, copy enclosed, it is stated that "immediate family," as defined by the regulations, includes "dependent" parents, and the criteria of dependency is that the parents must receive at least 51 percent of their support from the employee, or less if they are members of the employee's household.

In the present case, the record shows that your father's name was on the title of the residence at the time you were notified of the transfer. Also, the record fails to show that he was an immediate member (that he was a dependent) of your family. It is regrettable if you received inaccurate information from the relocation service company regarding what expenses were allowable. However, this provides no basis for allowance of expenses not otherwise authorized by the regulations. Accordingly, our review of the claims shows that no basis exists for the allowance of the remainder of the relocation company fee, and no payment may be authorized.

On August 28, 1991, Mr. Yeskoo appealed the April 16, 1991 GAO Claims Group decision, and the decision was affirmed by James F. Hinchman, General Counsel of the GAO, by letter dated September 3, 1992. That letter states:

We refer to your letter dated August 28, 1991, with enclosures, appealing the settlement action Z–2867015; April 16, 1991, of our Claims Group. In that action, the Claims Group determined that the Internal Revenue Service's denial of your claim for reimbursement of the remaining one-third of the relocation services company fee incurred in the sale of a residence at your old duty station. Reimbursement was denied since, at the time you were officially notified of your transfer, title to the residence was in the names of yourself, your wife, and your nondependent father who was not a member of your immediate fami-

ly as required by the Federal Travel Regulation, 41 C.F.R. § 302.6.1(c) (1991).

Upon our review of the record, including your letter of appeal, we find no error of fact, law, or regulation which would justify a reversal of the Claims Group's settlement action. Accordingly, that action is affirmed.

Plaintiff filed a two count complaint in this court seeking reimbursement of the $12,-941.25 withheld from the real estate settlement incident to his transfer. In this court, defendant moved for dismissal of Count II of plaintiff's complaint, based upon a failure to properly assert jurisdiction before this court. In addition, defendant moved for summary judgment on Count I of the complaint. In response, plaintiff cross-moved for summary judgment on Counts I and II of his complaint. After a review of the record in this case and of the oral arguments presented to the court, this court has determined that there are no genuine disputes of material fact at issue. Therefore, this case is ripe for disposition.

## DISCUSSION

■ When considering a motion to dismiss, the court may consider all relevant evidence in order to resolve any disputes as to the truth of the jurisdictional facts alleged in the complaint. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir.1988). The court is required to decide any disputed facts which are relevant to the issue of jurisdiction. *Id.* at 747.

■ The basic standards for weighing the evidence presented by the parties when evaluating a motion to dismiss for lack of jurisdiction, pursuant to the Rules of the United States Court of Federal Claims (RCFC) 12(b)(1), have been articulated by the United States Supreme Court and the United States Court of Appeals for the Federal Circuit as follows: "in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *accord Hamlet v.*

*United States,* 873 F.2d 1414, 1416 (Fed.Cir. 1989); *see also State of Alaska v. United States,* 32 Fed.Cl. 689, 695 (1995). In rendering a decision, the court must presume that the undisputed factual allegations included in the complaint by plaintiff are true. *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d at 746; *Miree v. De Kalb County,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977); *State of Alaska v. United States,* 32 Fed.Cl. at 695.

The burden of establishing jurisdiction is on the plaintiff. *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *State of Alaska v. United States,* 32 Fed.Cl. at 695; *Catellus Dev. Corp. v. United States,* 31 Fed. Cl. 399, 404 (1994). The court should not grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Moreover, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue,* 663 F.2d 713, 723 (7th Cir.1981).

In the above-captioned case, defendant has moved to dismiss Count II of plaintiff's complaint, asserting that Count II is a request for declaratory relief, over which this court has no jurisdiction. Defendant also claims that the statutes at issue, 5 U.S.C. §§ 5724a and 5724c, are not money-mandating statutes which create an entitlement to recovery, thus requiring dismissal for lack of subject matter jurisdiction.[4] In its motion to dismiss Count II, defendant argues that the reimbursement plaintiff seeks is discretionary under the statute and the regulations and does not entitle plaintiff to money as a matter of right. Defendant also argues in its motion to dismiss that even "if the Court were to reach the merits of Count II of the complaint, the regulations implementing 5 U.S.C. § 5724a(a)(4)(A) are entitled to deference as long as they represent a permissible construction of the statute."

Plaintiff, on the other hand, argues that the government has mischaracterized the relief requested in Count II and states that plaintiff's claim is one for money damages, not for declaratory relief. Plaintiff states that its request to strike down the regulations at issue as inconsistent with the statute is not a request for declaratory relief.[5] Plaintiff asserts that "[a]lthough the complaint refers to 'str[iking] down' the regulations as inconsistent with the statute, it is clear that plaintiff is invoking the familiar principle that a federal statute trumps an inconsistent regulation. . . ."

Count II of plaintiff's complaint, in its entirety, states as follows:

### COUNT II

11. Plaintiff repeats paragraphs 1 through 10.

12. To the extent that the applicable regulations, 42 [sic] C.F.R. Chapter 302, preclude plaintiff from recovering the full relocation benefit because his father, who had no ownership interest in the property, was on the deed to facilitate defendant's ability to obtain a mortgage, such regulations are discriminatory, arbitrary and capricious and should be struck down by this Court.

---

4. Oddly enough, defendant does not raise the alleged jurisdictional defect that 5 U.S.C. § 5724a and § 5724c are not mandating statutes regarding Count 1 of plaintiff's complaint. Rather defendant responds to Count 1 of the complaint by filing only a motion for summary judgment and deals with the allegations raised in Count 1 on the merits, conceding that the statute together with implementing federal regulations may meet the money mandating requirements. Moreover, except for paragraph 12 of Count II, the request for declaratory relief, the factual allegations and claims made by plaintiff are identical to, or closely parallel, the allegations and claims included in Count I of the complaint. In fact, the Wherefore Clause, paragraph 10 to Count I, and paragraph 13 of Count II both request the same amount of monetary relief and for the same reason.

5. Although defendant and plaintiff address the consistency argument as part of their discussions of the motion to dismiss Count II of plaintiff's complaint, the court believes that discussion of this issue is more appropriately handled below as part of the discussion on the cross-motions for summary judgments and on the merits of Count I of the complaint.

13. Plaintiff is therefore entitled to reimbursement of the full relocation benefit and the United States is indebted to plaintiff in the amount of $12,941.25.

■ In order for this court to have jurisdiction over Count II of plaintiff's complaint, the Tucker Act, 28 U.S.C. § 1491 (1988 and Supp.1993), requires that a substantive right, independent of 28 U.S.C. § 1491, must exist which is enforceable against the United States for money damages. The Tucker Act merely confers jurisdiction on the Court of Federal Claims; it does not create any substantive right enforceable against the United States for money damages. *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980) (*Mitchell I*); *United States v. Testan,* 424 U.S. 392, 398–99, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976); *United States v. Connolly,* 716 F.2d 882, 885 (Fed.Cir.1983) (*en banc*), *cert. denied,* 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984).

The Tucker Act provides:

The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).

■ Moreover, a waiver of the traditional sovereign immunity "cannot be implied but must be unequivocally expressed." *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1503, 23 L.Ed.2d 52 (1969). The individual claimants, therefore, must look beyond the jurisdictional statute for a waiver of sovereign immunity. *United States v. Testan,* 424 U.S. at 398, 96 S.Ct. at 953. Stated otherwise, "in order for a claim against the United States founded on statute or regulation to be successful, the provisions relied upon must contain language which could fairly be interpreted as mandating recovery of compensation from the government." *Cummings v. United States,* 17 Cl.Ct. 475, 479 (1989), *aff'd,* 904 F.2d 45 (Fed.Cir.1990); *see also United*

*States v. Mitchell,* 463 U.S. 206, 216–17, 103 S.Ct. 2961, 2967–68, 77 L.Ed.2d 580 (1983) (*Mitchell II*) (citing *United States v. Testan,* 424 U.S. at 400, 96 S.Ct. at 954 (quoting *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. 599, 607, 372 F.2d 1002, 1009 (1967))); *Duncan v. United States,* 229 Ct.Cl. 120, 138, 667 F.2d 36, 47 (1981), *cert. denied,* 463 U.S. 1228, 103 S.Ct. 3569, 77 L.Ed.2d 1410 (1983).

This court's predecessor, the United States Court of Claims, articulated the jurisdiction of this court, pursuant to 28 U.S.C. § 1491, in *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. 599, 372 F.2d 1002 (1967). The court, therefore, offers the following, albeit lengthy, comprehensive selections from *Eastport Steamship Corp. v. United States,* which more fully explain the jurisdictional parameters:

Section 1491 of Title 28 of the United States Code allows the Court of Claims to entertain claims against the United States 'founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort'. But it is not every claim involving or invoking the Constitution, a federal statute, or a regulation which is cognizable here. The claim must, of course, be for money. Within that sphere, the non-contractual claims we consider under Section 1491 can be divided into two somewhat overlapping classes—those in which the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum; and those demands in which money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury. In the first group (where money or property has been paid or taken), the claim must assert that the value sued for was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation. In the second group, where no such payment has been made, the allegation must be that the particular provision of law relied upon grants

the claimant, expressly or by implication, a right to be paid a certain sum. . . .

We have referred to these cases [the former cases] as those in which 'the Government has the citizen's money in its pocket' and the claim is 'to recover an illegal exaction made by officials of the Government, which exaction is based upon a power supposedly conferred by a statute' [citations omitted]; and we have held that 'suit can be brought in this court to recover [such] exactions said to have been illegally imposed by federal officials (except where Congress has expressly placed jurisdiction elsewhere)' [citations omitted].

The second category includes the varied litigations in which we are urged to hold that some specific provision of law embodies a command to the United States to pay the plaintiff some money, upon proof of conditions which he is said to meet. . . .

Monetary claims which cannot be brought within these limits are beyond this court's jurisdiction, even though they may intimately involve the Constitution, an Act of Congress, or an executive regulation. This is the reverse of saying that this court is not concerned with any and all pecuniary claims against the Federal Government, simply because they rely upon (and in that sense are 'founded upon') an aspect of federal, constitutional, statutory or regulatory law. Where the claimant is not suing for money improperly exacted or retained (the first class defined above), the historical boundaries of our competence have excluded those instances in which the basis of the federal claim—be it the Constitution, a statute, or a regulation—cannot be held to command, in itself and as correctly interpreted, the payment of money to the claimant, but in which some other principle of damages has to be invoked for recovery. . . . Under Section 1491 what one must always ask is whether the constitutional clause or the legislation which the claimant cites can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained. If not, this court cannot give relief under Section 1491, although some separate general principle—arising, for example, from tort law—might lead to a remedy in another forum or under some special relief provision.

*Eastport Steamship Corp. v. United States*, 178 Ct.Cl. at 605–07, 372 F.2d at 1007–08 (citations omitted).

■ Defendant contends that the statutes at issue, 5 U.S.C. §§ 5724a and 5724c are not money-mandating statutes, as required by the Tucker Act, and that, therefore, this court does not have subject matter jurisdiction. While the government concedes in its motion to dismiss that the statutes at issue, 5 U.S.C. §§ 5724a and 5724c, may be money-mandating when combined with the implementing regulations, the government contends that the statutes alone do not provide for payment of the reimbursement expenses sought by the plaintiff as a matter of right. Oddly enough, although defendant concedes that the statute may be money-mandating when read in conjunction with the implementing regulation, defendant, nonetheless, asks this court to ignore those regulations. The court declines to adopt defendant's approach.

The courts have held that: "If the language and effect of the statute is mandatory, then the court possesses jurisdiction to hear the case based on that money-mandating statute. If, on the other hand, the language of the statute is permissive in scope and effect, the statute does not grant jurisdiction to hear the case in this court." *Lewis v. United States*, 32 Fed.Cl. 59, 63 (1994) (citing *Rickard v. United States*, 11 Cl.Ct. 874 (1987)); *see also Grav v. United States*, 886 F.2d 1305, 1309 (Fed.Cir.1989); *Adair v. United States*, 227 Ct.Cl. 345, 648 F.2d 1318, 1322 (1981); *Eastport Steamship Corp. v. United States*, 372 F.2d 1002, 178 Ct.Cl. 599, 607 (1967).

Section 5724a(a) states, in pertinent part, as follows:

Under such regulations as the President may prescribe and to the extent considered necessary and appropriate, as provided therein, appropriations or other funds available to an agency for administrative expenses are available for the reimbursement of *all or part* of the following expenses of an employee for whom the Gov-

ernment pays expenses of travel and transportation under section 5724(a) of this title.... [Emphasis added.]

Furthermore, the opening words of the implementing regulation, 41 C.F.R. 302–6.1, state:

To the extent allowable under this part, the Government *shall reimburse* an employee for expenses required to be paid by him/her in connection with the sale of one residence at his/her old official station, for purchase (including construction) of one dwelling at his/her new official station, or for the settlement of an unexpired lease involving his/her residence or a lot on which a mobile home used as his/her residence was located at the old official station provided the conditions set forth in this section are met.... [Emphasis added.]

According to 5 U.S.C. § 5724a, appropriations authority is available to the executive branch to provide reimbursement for "all or part" of the expenses due to an employee upon his or her employment transfer. The statute seems to expect that a reimbursement program would be developed since "all or part" does not include the concept of "none." *See* 5 U.S.C. § 5724a(a). While the statute does not mandate that funds must be provided for total compensation of an employee's transfer expenses, the regulation, 41 C.F.R. § 302–6.1, clearly states that "the Government shall reimburse" the employee for expenses related to the sale and purchase of his/her dwelling incident to a transfer. Although the specific expenses to be reimbursed are discretionary and may be defined in further regulation, 5 U.S.C. § 5724a(a) and 41 C.F.R. § 302–6.1 appear clearly to establish the right of an employee to claim reimbursement for real property sale and purchase expenses related to an employee transfer. Consequently, the Federal Travel Regulations issued by the Executive Branch give agencies guidelines to follow in determining who is eligible for compensation and how much should be reimbursed, but do not take away an employee's right to some form of reimbursement, if the stated requirements have been met.

In *Mueller v. United States,* 16 Cl.Ct. 608 (1989), *aff'd,* 892 F.2d 1050 (Fed.Cir.1989), the court affirmed the basic entitlement of employees to receive reimbursement for relocation expenses pursuant to section 5724a.[6] The *Mueller* court referred specifically to section 5724a(a)(4)(A), passed in 1987, as an amendment to 5 U.S.C. § 5724a, which "extended the right of reimbursement for expenses resulting from the sale or purchase of real estate to employees transferred from *posts located outside the United States* and other named area...." *Id.* at 612. The *Mueller* court clearly acknowledged that there was a right to some reimbursement and, therefore, found the statute to be money-mandating, and not solely permissive in nature.

Although 5 U.S.C. § 5724a should be considered as mandating the right to compensation in appropriate factual circumstances, 5 U.S.C. § 5724c contains discretionary language and allows agencies the option of contracting with relocation services to expedite employee transfers. Actions undertaken pursuant to 5 U.S.C. § 5724c, however, must be undertaken pursuant to the guidelines of section 5724a. 5 U.S.C. 5724c states:

§ 5724c. Relocation services

Under such regulations as the President may prescribe, each agency is *authorized to enter into contracts* to provide relocation services to agencies and employees for the purpose of carrying out the provisions of this subchapter. Such services include but need not be limited to arranging for the purchase of a transferred employee's residence. [Emphasis added.]

Implicitly, 5 U.S.C. 5724c also acknowledges that an employee is to receive reimbursement for appropriate relocation expenses and offers the executive agencies optional tools to implement the reimbursement program. Based on the above, this court holds that 5 U.S.C. § 5724a and its implementing regulation is the type of money mandating statutory scheme necessary to confer jurisdiction on this court.

---

**6.** Although the *Mueller* case involved a transfer overseas, the court's position on the entitlement of an employee to reimbursement for relocation expenses is relevant to the instant case.

■ Plaintiff's claim for relief in Count II of its complaint is vague. It appears from the text of paragraph 12 of Count II, however, that despite plaintiff's disclaimers, he, indeed, seeks declaratory relief, which is outside of the jurisdictional purview of this court. Plaintiff alleges that if the applicable regulations "preclude plaintiff from recovering ...", those regulations are "discriminatory, arbitrary and capricious" and should be struck down by this Court. This court interprets plaintiff's a request as seeking a declaration by this court that the regulations at issue are invalid.

■ This court does not have the authority to grant the declaratory relief requested by plaintiff. Courts which are created by statute are limited to the jurisdiction conferred on it by those statutes. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818–19, 108 S.Ct. 2166, 2179, 100 L.Ed.2d 811 (1988). Specifically, this court does not have jurisdiction to declare this statute or the enabling regulations as invalid. *Cienega Gardens v. United States,* 33 Fed.Cl. 196, 224 (1995); *Aerolineas Argentinas v. United States,* 31 Fed.Cl. 25, 32 n. 9 (1994). In *Cienega v. United States,* this court stated that the Court of Federal Claims has no jurisdiction to order an agency "to adopt or change any particular regulation, nor may it declare any particular regulation invalid." *Cienega,* 33 Fed.Cl. at 224. Moreover, the court in *Argentinas v. United States* stated as follows:

> This court, being a court of limited jurisdiction and having no general equity jurisdiction, can neither entertain a case merely to grant equitable relief nor rewrite a statute, regulation, or government contract to effectuate a result the court may consider to be more "fair" than what that statute, regulation, or contract provides. *See Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 818, 108 S.Ct. 2166, 2178–79, 100 L.Ed.2d 811 (1988).

*Id.* at 32 n. 9. While this court may find agency conduct not in accordance with statutory guidance, it may determine the meaning and purpose of statutes and regulations and may determine if an agency improperly applied a statute or regulation, this court does not possess jurisdiction to issue the type of declaratory relief requested by the plaintiff to strike down the regulations at issue in the instant case.[7]

Based on the foregoing discussion, defendant's motion to dismiss Count II of the complaint, because it requests declaratory relief, is hereby, GRANTED. Plaintiff's motion for summary judgment on Count II is, hereby, DEEMED MOOT.

Regarding Count I of plaintiff's complaint, defendant seeks summary judgment, and plaintiff has cross-moved for summary judgment. Summary judgment in this court should be granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56 of this court is patterned on Rule 56 of the Federal Rules of Civil Procedure (Fed.R.Civ.P.) and is similar in language and effect. Both rules provide that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

---

7. This court recognizes that it is empowered to issue declaratory judgments under certain limited circumstances specifically delegated to it by statute. For example, in 1992, the Federal Courts Administration Act amended 28 U.S.C. § 1491(a)(2) to include equitable relief in certain circumstances. The 1992 Amendment to the Tucker Act affected government contract claims by including relief for "a dispute concerning termination of a contract, rights to tangible or intangible property, compliance with costs accounting standards, and other nonmonetary disputes on which a decision of the contracting officer has been issued...." 28 U.S.C. § 1491(a)(2); *see Reflectone v. Dalton,* 60 F.3d 1572 (Fed.Cir.1995). Similarly, the court has the declaratory judgment authority pursuant to § 7428 of the Internal Revenue Code (26 U.S.C. § 7428 (1988)), regarding the determination (or failure to determine) the initial or continuing *qualification of an entity (i) as a tax-exempt orga*nization under § 501(c)(3) of the Internal Revenue Code (ii) as a private foundation under 509 of the Internal Revenue Code or (iii) as a private operating foundation under § 4942(j)(3) of the Internal Revenue Code. The court also has declaratory authority pursuant to 28 U.S.C. 1496 (1988). None of those statutes, however, apply to the instant case.

material fact and that the moving party is entitled to a judgment as a matter of law."

Rule 56(c) of the Rules of the United States Court of Federal Claims (RCFC) provides that in order for a motion for summary judgment to be granted, the moving party bears the burden of demonstrating that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Creppel v. United States*, 41 F.3d 627, 630–31 (Fed.Cir.1994); *Meyers v. Asics Corp.*, 974 F.2d 1304, 1306 (Fed.Cir.1992); *Rust Communications Group v. United States*, 20 Cl.Ct. 392, 394 (1990); *Lima Surgical Assocs., Inc. Voluntary Employees' Beneficiary Ass'n Plan Trust v. United States*, 20 Cl.Ct. 674, 679 (1990), *aff'd*, 944 F.2d 885 (Fed.Cir.1991). Disputes over facts which are not outcome determinative under the governing law will not preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Summary judgment, however, will not be granted if "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury [trier of fact] could return a verdict for the non moving party." *Id.; see also Uniq Computer Corp. v. United States*, 20 Cl.Ct. 222, 228–29 (1990).

When reaching a summary judgment determination, the judge's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249, 106 S.Ct. at 2510; *see, e.g., Cloutier v. United States*, 19 Cl.Ct. 326, 328 (1990), *aff'd without op.*, 937 F.2d 622 (Fed.Cir.1991). The judge must determine whether the evidence presents a disagreement sufficient to require submission to fact finding, or whether the issues presented are so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250–52, 106 S.Ct. at 2511–12. When the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial, and the motion must be granted. *Matsushita Elec. Industrial Co.*

*v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Stated otherwise, if the nonmoving party cannot present the evidence to support its case under any scenario, then there should be no need for the parties to undertake the time and expense of a trial, and the moving party should prevail without further proceedings.

If, however, the nonmoving party produces sufficient evidence to raise a question as to the outcome of the case, then the motion for summary judgment should be denied. Any doubt over factual issues must be resolved in favor of the party opposing summary judgment, to whom the benefit of all presumptions and inferences runs. *Id.; see also Litton Industrial Products, Inc. v. Solid State Systems Corp.*, 755 F.2d 158, 163 (Fed. Cir.1985); *H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1574 (Fed.Cir.1984), *cert. denied*, 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985).

The initial burden on the party moving for summary judgment, to produce evidence showing the absence of a genuine issue of material fact, may be discharged if the moving party can demonstrate that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); *see also Lima Surgical Assocs.*, 20 Cl.Ct. at 679. If the moving party makes such a showing, the burden then shifts to the nonmoving party to demonstrate that a genuine factual dispute exists by presenting evidence which establishes the existence of an element of its case upon which it bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. at 322, 106 S.Ct. at 2552; *Lima Surgical Assocs.*, 20 Cl.Ct. at 679.

Pursuant to Rule 56, the motion for summary judgment may succeed, whether or not accompanied by affidavits and/or other documentary evidence in addition to the pleadings already on file. *Celotex Corp. v. Catrett*, 477 U.S. at 324, 106 S.Ct. at 2553. Generally, however, in order to prevail, the nonmoving party will need to go beyond the pleadings, by use of evidence such as affidavits, depositions, answers to interrogatories

and admissions, in order to demonstrate that a genuine issue for trial exists. *Id.*

 In the above-captioned case, the fact that both the parties argue in favor of summary judgment and allege an absence of genuine issues of material fact, however, does not relieve the court of its responsibility to determine the appropriateness of summary disposition in the particular case. *Prineville Sawmill Co. v. United States*, 859 F.2d 905, 911 (Fed.Cir.1988) (citing *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed.Cir.1987)). "[S]imply because both parties moved for summary judgment, it does not follow that summary judgment should be granted one or the other." *LewRon Television, Inc. v. D.H. Overmyer Leasing Co.*, 401 F.2d 689, 692 (4th Cir.1968), *cert. denied*, 393 U.S. 1083, 89 S.Ct. 866, 21 L.Ed.2d 776 (1969); *see also Levine v. Fairleigh Dickinson Univ.*, 646 F.2d 825, 833 (3d Cir.1981); *Home Ins. Co. v. Aetna Cas. & Sur. Co.*, 528 F.2d 1388, 1390 (2d Cir.1976); *Ishida v. United States*, 31 Fed.Cl. 280, 284 (1994). Cross-motions are no more than a claim by each party that it alone is entitled to summary judgment. The making of such inherently contradictory claims, however, does not establish that if one is rejected the other is necessarily justified. *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968); *Bataco Indus., Inc. v. United States*, 29 Fed.Cl. 318, 322 (1993), *aff'd* 31 F.3d 1176 (Fed.Cir.1994). The court must evaluate each party's motion on its own merit, taking care to draw all reasonable inferences against the party whose motion is under consideration. *Mingus Constructors, Inc.*, 812 F.2d at 1391.

In the instant case, plaintiff contends that the government was legally obligated to compensate him for relocation expenses he incurred due to his employee transfer. Plaintiff contends that the government relied upon inapplicable and inconsistent statutory and regulatory authority when it decided to withhold one-third of the total cost of his relocation expenses on the sale of his residence. Plaintiff, however, provides absolutely no support in either legislative history, statutory construction, or case law for his position.

 The United States Court of Appeals for the Federal Circuit has offered guidance regarding how to approach statutory interpretation, as follows:

Statutory construction requires the application of recognized rules. *See generally Sutherland Statutory Construction* (4th ed.). First, " ' "[t]he starting point in every case involving construction of a statute is the language itself." ' " *Greyhound Corp. v. Mt. Hood Stages, Inc.*, 437 U.S. 322, 330, 98 S.Ct. 2370, 2375, 57 L.Ed.2d 239 (1978). Second, where a statute states what a term "means" then all other meanings not stated are excluded. *Colautti v. Franklin*, 439 U.S. 379, 392 n. 10, 99 S.Ct. 675, 684, n. 10, 58 L.Ed.2d 596 (1979). Third, clear evidence of legislative intent prevails over other principles of statutory construction. *National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers*, 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974). Fourth, absent a very clear legislative intent, the plain meaning will prevail. *Aaron v. SEC*, 446 U.S. 680, 697, 100 S.Ct. 1945, 1956, 64 L.Ed.2d 611 (1980). Last, "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it reenacts a statute without change." *Lorillard v. Pons*, 434 U.S. 575, 580, 98 S.Ct. 866, 870, 55 L.Ed.2d 40 (1978); *National Lead Co. v. United States*, 252 U.S. 140, 146–47, 40 S.Ct. 237, 239, 64 L.Ed. 496 (1920); *Farrell Lines, Inc. v. United States*, 499 F.2d 587, 605, 204 Ct.Cl. 482 (1974); *cf. Pierce v. Underwood*, [487] U.S. [552], 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988).

*Johns–Manville Corp. v. United States*, 855 F.2d 1556, 1559 (Fed.Cir.1988), *cert. denied*, 489 U.S. 1066, 109 S.Ct. 1342, 103 L.Ed.2d 811 (1989). Moreover, if a statute is plain and unequivocal on its face, there is no need to resort to the legislative history underlying the statute. *Reid v. Department of Commerce*, 793 F.2d 277, 281 (Fed.Cir.1986) (citing *United States v. Oregon*, 366 U.S. 643, 648, 81 S.Ct. 1278, 1281, 6 L.Ed.2d 575 (1961), *reh'g denied*, 368 U.S. 870 (1961)). In fact, a court should resort to legislative history only if:

... a literal interpretation would lead to an incongruous result. For example, if a literal reading of the statute would impute to Congress an irrational purpose, *United States v. Bryan,* 339 U.S. 323, 338, 70 S.Ct. 724, 734, 94 L.Ed. 884 (1950), or would thwart the obvious purpose of the statute, *Trans Alaska Pipeline Rate Cases,* 436 U.S. 631, 643, 98 S.Ct. 2053, 2061, 56 L.Ed.2d 591 (1978), or would lead to a result at variance with the policy of the legislation as a whole, *Trustees of Indiana University v. United States,* 618 F.2d 736, 739, 223 Ct.Cl. 88, 94 (1980), then literal interpretation will be eschewed in favor of resort to the legislative history to ascertain the intent of Congress. *United States v. Oregon,* 366 U.S. at 648, 81 S.Ct. at 1281; 2A Sands § 46.07.

*Reid v. Department of Commerce,* 793 F.2d at 281–82. Accepted principles of statutory construction also provide that courts must interpret a statute as a whole. *Massachusetts v. Morash,* 490 U.S. 107, 115, 109 S.Ct. 1668, 1673, 104 L.Ed.2d 98 (1989). To this effect, the Supreme Court has written:

> On numerous occasions we have noted that " " " '[i]n expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy.' " ' " *Kelly v. Robinson,* 479 U.S. 36, 43 [107 S.Ct. 353, 357, 93 L.Ed.2d 216] (1986), quoting *Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 221 [106 S.Ct. 2485, 2493, 91 L.Ed.2d 174] (1986) (quoting *Mastro Plastics Corp. v. NLRB,* 350 U.S. 270, 285 [76 S.Ct. 349, 359, 100 L.Ed. 309] (1956) (in turn quoting *United States v. Heirs of Boisdore,* 8 How. 113, 122 [12 L.Ed. 1009] (1849))).

*Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 51, 107 S.Ct. 1549, 1555, 95 L.Ed.2d 39 (1987). *See* Sutherland Stat. Const. §§ 46.05, 46.06 (5th ed. 1992). Otherwise stated, courts must " 'give effect, if possible, to every clause and word of a statute,' " *United States v. Menasche,* 348 U.S. 528, 538–39, 75 S.Ct. 513, 519–520, 99 L.Ed. 615 (1955) (quoting *Montclair v. Ramsdell,* 107 U.S. 147, 152, 2 S.Ct. 391, 394, 27 L.Ed. 431 (1883)), for " '[t]he cardinal principle of statutory construction is to save and not to destroy.' " *Id.* (quoting *Labor Bd. v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 30, 57 S.Ct. 615, 621, 81 L.Ed. 893 (1937)).

In construing a statute, courts should attempt not to interpret a provision such that it renders other provisions of the same statute inconsistent, meaningless or superfluous. *Boise Cascade Corp. v. United States E.P.A.,* 942 F.2d 1427, 1432 (9th Cir. 1991). *See* Sutherland Stat. Const. § 46.06 (5th ed. 1992). The meaning of statutory language depends on context, and a statute should be read as a whole. *King v. Saint Vincent's Hosp.,* 502 U.S. 215, 221, 112 S.Ct. 570, 574, 116 L.Ed.2d 578, 586 (1991) (Souter, J.) (citing *Shell Oil Co. v. Iowa Dept. of Revenue,* 488 U.S. 19, 26, 109 S.Ct. 278, 282, 102 L.Ed.2d 186 (1988)). As stated in *King v. Saint Vincent's Hosp.,* "[w]ords are not pebbles in alien juxtaposition; they have only a communal existence; and not only does the meaning of each interpenetrate the other, but all in their aggregate take their purport from the setting in which they are used." *King v. Saint Vincent's Hosp.,* 502 U.S. at 221, 112 S.Ct. at 574 (quoting *NLRB v. Federbush Co.,* 121 F.2d 954, 957 (2nd Cir.1941) (L. Hand, J.)). Therefore, when reviewing the statute and regulations at issue in this case, this court must construe each part of a statute in connection with all the other sections, so as to produce a harmonious whole. Moreover, common sense requires that the same words used twice in the same act should have the same meaning. *See* Sutherland Stat. Const. § 46.06 (5th ed. 1992).

When reviewing an agency's construction of a statute it administers, courts have shown great deference to the interpretation given by that agency. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984); *Katsis v. Immigration & Naturalization Service,* 997 F.2d 1067, 1069 (3rd Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 902, 127 L.Ed.2d 93 (1994); *see also Wassenaar v. Office of Personnel Management,* 21 F.3d 1090, 1092 (Fed.Cir.1994). "[T]he courts must respect the interpretation of the agency to which Congress has delegated the respon-

sibility for administering the statutory program." *Katsis,* 997 F.2d at 1070 (quoting *INS v. Cardoza–Fonseca,* 480 U.S. 421, 448, 107 S.Ct. 1207, 1221, 94 L.Ed.2d 434 (1987)). The Supreme Court has held that when Congress has not directly addressed the question at issue, such as in the instant case:

> the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. at 843, 104 S.Ct. at 2782.

 Moreover, if there are gaps, either explicit or implicit in the statute, it is the responsibility of the administrative agency to fill in those gaps by implementing regulations with necessary clarifications. *Chevron,* 467 U.S. at 843, 104 S.Ct. at 2782. The Court in *Chevron* stated that "[i]f Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation." *Id.* Regulations are given controlling weight unless "they are arbitrary, capricious, or manifestly contrary to the statute." *Chevron,* 467 U.S. at 844, 104 S.Ct. at 2782. Moreover, the agency's interpretation does not have to be the only possible interpretation, but rather a construction which the appropriate administrator could have reasonably devised. *Id.* at 843, n. 11, 104 S.Ct. at 2782, n. 11. *Zenith Radio Corp. v. United States,* 437 U.S. 443, 450, 98 S.Ct. 2441, 2445, 57 L.Ed.2d 337 (1978); *Train v. Natural Resources Defense Council, Inc.,* 421 U.S. 60, 75, 95 S.Ct. 1470, 1479, 43 L.Ed.2d 731 (1975); *Udall v. Tallman,* 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); *McLaren v. Fleischer,* 256 U.S. 477, 41 S.Ct. 577, 65 L.Ed. 1052 (1921).

 After an examination of the statutes and regulations at issue in this case, and, in accordance with the guidelines set forth above, this court has determined that the Federal Travel Regulations found at 41 C.F.R. § 302, *et seq.,* implementing 5 U.S.C. § 5724a and § 5724c, are not arbitrary, capricious, contrary to law, or inconsistent with the statute. Although the statute leaves gaps, such as individual eligibility for relief, the regulations which implement the statute provide the necessary clarification on those issues. There is no indication that the agency given the authority to elucidate the provisions of § 5724a and § 5724c acted arbitrarily or abused its authority. While there is no clear legislative history pertaining to these statutes, the language in 5 U.S.C. § 5724a specifically allows for the reimbursement of employees' transfer expenses, and 5 U.S.C. § 5724c provides that agencies are authorized to enter into contracts for relocation services to assist agencies and employees, "[u]nder such regulations as the President may prescribe...." 5 U.S.C. §§ 5724a, 5724c.

Not only is there no evidence that the regulations are inconsistent with the statutes, to the contrary, the Federal Travel Regulations complement 5 U.S.C. § 5724a and § 5724c. Section 5724a(a)(4)(A) of the statute describes how an agency should apportion reimbursement compensation for expenses related to the sale of a residence, depending on who is on the deed at the time the employee receives notification of a transfer. The implementing regulation, 41 C.F.R. § 302–6 specifically clarifies ambiguities in that portion of the statute by outlining the conditions and requirements necessary to obtain reimbursement. For example, in the case of 5 U.S.C. § 5724a, the statute allows for reimbursement for relocation expenses and 41 C.F.R. 302–1.4 of the regulation further defines those who are entitled to compensation, namely an "immediate family member." Because plaintiff has not demonstrated any evidence to the contrary, this court will show deference to agencies' regulatory construction of the statutes and reject plaintiff's allegations.

Plaintiff also states that when calculating the appropriate amount to compensate plaintiff for his relocation expenses, defendant incorrectly relied upon 5 U.S.C. § 5724a, which addresses relocation expenses of transferred employees. Plaintiff argues, however, that 5 U.S.C. § 5724c is the appropriate stat-

ute which should have been applied, noting that under the facts and circumstances of this case, a relocation service was used in plaintiff's transfer. Plaintiff, therefore, claims that he should not be bound by the limitations found in 5 U.S.C. § 5724a and its implementing regulations contained in 41 C.F.R. § 302–6, but rather the relevant calculation should be governed by 5 U.S.C. § 5724a and 41 C.F.R. § 302–12. Unfortunately for the plaintiff, 5 U.S.C. § 5724c, and its implementing regulations, are constrained by the general provisions and limitations found in 5 U.S.C. § 5724a. Therefore, as is discussed below, both provisions of the statute placed at issue by the parties, 5 U.S.C. §§ 5724a and 5724c, are relevant to the disposition of this case.

Section 5724a(4)(A), specifically pertains to relocation expenses. This section allows for reimbursement of the following:

> Expenses of the sale of the residence (or the settlement of an unexpired lease) of the employee at the old station and purchase of a home at the new official station required to be paid by him when the old and new official stations are located within the United States ... This paragraph applies regardless of whether title to the residence or the unexpired lease is in the name of the employee alone, in the joint names of the employee and a member of his immediate family, or in the name of a member of his immediate family alone.

5 U.S.C. § 5724a(a)(4)(A).

Although a definition of "immediate family" is not provided in the statute, the implementing regulations provide the necessary definitions. "Immediate family" is defined in the regulations, specifically 41 C.F.R. § 302–1.4(f), as any of the following named members of the employee's household: a spouse, unmarried children who are under 21 years of age or who, regardless of age, are physically or mentally incapable of self-support,

dependent parents or brothers/sisters. Individuals, generally, are considered dependent in the regulations if they receive 51 percent of their support from the employee or employee's spouse, although the 51 percent factor is not solely determinative. 41 C.F.R. § 302–1.4(f)(2).[8]

Regarding residence relocation services, 5 U.S.C. § 5724c provides the following:

> Under such regulations as the President may prescribe, each agency is authorized to enter into contracts to provide relocation services to agencies and employees for the purpose of carrying out the provisions of this subchapter. Such services include but need not be limited to arranging for the purchase of a transferred employee's residence.

5 U.S.C. § 5724c.

The implementing regulations of 5 U.S.C. § 5724c are found at 41 C.F.R. § 302–12.1. That regulation gives discretionary authority to agencies, allowing them to enter into contracts with private firms to provide relocation services to agencies and employees, as follows:

> The law (5 U.S.C. 5724c) specifically provides each agency (as defined in 5 U.S.C. 5721 and § 302–1.4(e)) with discretionary authority to enter into contracts with private firms to provide relocation services to agencies and employees. Such services include, but need not be limited to, arranging for the purchase of a transferred employee's residence. Agencies exercising this discretionary authority shall carry out their responsibilities under 5 U.S.C. 5724c within the guidelines of this part. This part is issued under the authority delegated to the Administrator of General Services by Executive Order 12466 dated February 27, 1984.

41 C.F.R. § 302–12.1.

The regulation notes that Congress created 5 U.S.C. § 5724c to "improve the treat-

---

8. Although the definition of "immediate family" included in 41 C.F.R. § 302–1.4(f) uses the time measure of "at the time he/she reports for duty at a new permanent duty station," the general admonition at the start of 41 C.F.R. § 302–1.4 reads: "As used in this chapter, and unless otherwise specifically provided in this chapter, the following definitions apply...." Therefore, as is discussed more fully below, the more specific time definition included in 41 C.F.R. § 302–6.1(c)(1), which pinpoints the time of official notification of transfer as applicable to reimbursement of employee expenses based on the sale of residences at the time of transfer applies in the instant case.

ment of employees who are directed to relocate and thereby facilitate retention of well-qualified employees." 41 C.F.R. § 302–12.2. Although 5 U.S.C. § 5724c affords agencies a discretionary opportunity to provide additional services related to real estate transactions for transferred employees, it is still limited by the regulations and restrictions governing the remaining sections of the subchapter, including 5 U.S.C. § 5724a and also must exist within the parameters of the other regulations issued pursuant to that section of the statute. *See In the Matter of Deborah L. Childress*, B–253202.2, 11 (C.G.) (1995). Section 5724c is simply another tool which an agency may opt to employ in order to aid its employees during relocation.

In 41 C.F.R. § 302–12.6(b)(2), agencies are specifically cautioned to remain within the provisions and limitations of the remainder of chapter 302:

(2) Federal agencies should ensure that contracts with relocation companies that are on a cost reimbursable basis include only those services that are analogous to the allowable expenses authorized in this chapter, and that the payments for such services are limited to the maximum amounts specified in this chapter. Agencies must recognize that the statute and the provisions of this chapter contain certain limitations and restrictions which are not overridden by the new authority for relocation services.

41 C.F.R. § 302.12.6(b)(2). Section 302–12.5(d) of the regulations requires that payments made to relocation companies cannot benefit "ineligible individuals." While there is no clear definition of "ineligible individual" in this section of the regulations, its meaning is clarified in the balance of applicable regulations included in 41 C.F.R. § 302, the regulations which implement 5 U.S.C. §§ 5724a and 5724c.

Based on the plain language of the applicable statutes and regulations, and cognizant of the Comptroller General's rulings on point, compensation under section 5724c is limited by the requirements set out in section 5724a and in Chapter 302 of 41 C.F.R. There is no reason to allow varying compensation for employees, depending on whether or not they use a relocation service. The agency may pay the relocation company's full fee, only if the extent of the employee's interest in the residence is such that had he sold it himself, he would have been entitled to full reimbursement for his expenses under the Federal Travel Regulations. *In the Matter of William J. Fitzgerald*, B–222742, 66 Comp.Gen. 95, 2 (1986). The defendant properly argues that it would make no sense to expand the rights of the plaintiff simply because the plaintiff opted to use a relocation service rather than relocating on his own.

Part 302–6 of 41 C.F.R. allows reimbursement of expenses paid directly by the employee in connection with selling his/her home at the old station and the purchase of a new dwelling at his/her new station. There are two prerequisites which need to be met in order to obtain full reimbursement under this section. The first requires that

The title to the residence or dwelling at the old or new official station, or the interest in a cooperatively owned dwelling or in an unexpired lease, is in the name of the employee alone, or in the joint names of the employee and one or more members of his/her immediate family, or solely in the name of one or more members of his/her immediate family.

41 C.F.R. § 302–6.1(c). The second requirement defines the time at which the interest in property must have been obtained.

For an employee to be eligible for reimbursement of the costs of selling a dwelling or terminating a lease at the old official station, the employee's property interest must have been acquired prior to the date the employee was first officially notified of his/her transfer to the new official station.

41 C.F.R. § 302–6.1(c)(1).

The definition of immediate family as it pertains to this case includes dependent parents. As discussed above, however, in order to be considered a "dependent," the parent must receive at least 51 percent of their support from the employee or employee's spouse, or qualify in accordance with the regulatory requirements.

 There appear to have been no decisions issued which interpret the statutes and

regulations at issue in this dispute, by the United States Supreme Court, the United States Court of Appeals for the Federal Circuit, or the United States Court of Claims, the binding precedential courts for this court. Decisions issued by the Comptroller General, however, have consistently held that when an employee holds title to a residence with others who are not part of the immediate family, the employees may be reimbursed only to the extent of his or her and his or her immediate family's interest in the residence. Such has been the holding, even if, as in the instant case, that person has played no role in the payments on, or in the maintenance of, the residence. *See In the Matter of William Burlington,* B–240638, Comp.Gen., November 20, 1990; *In the Matter of William J. Fitzgerald,* B–222742, 1986 WL 61086 (C.G.). While Comptroller General Opinions are not binding on this court, the court finds them to be instructive on the issues in dispute in this case given the Comptroller General's collective experience. *See Cleveland Telecommunications Corp. v. Goldin,* 43 F.3d 655, 658 n. 1 (Fed.Cir.1994); *Planning Research Corp. v. United States,* 971 F.2d 736, 740 (Fed.Cir. 1992); *Compliance Corp. v. United States,* 22 Cl.Ct. 193, 204 n. 8 (1990) (quoting *RADVA Corp. v. United States,* 17 Cl.Ct. 812, 821 n. 13 (1989), *aff'd* 914 F.2d 271 (Fed.Cir.1990); *CACI Field Servs., Inc. v. United States,* 13 Cl.Ct. 718, 731 n. 28 (1987), *aff'd,* 854 F.2d 464 (Fed.Cir.1988)).

Initially, despite the definition in 41 C.F.R. § 302–1.4, plaintiff alleged that his father, who was on the deed to his house in Virginia, was a part of his immediate family. He never claimed, however, that his father was a dependent. Plaintiff later changed his argument to assert that even if 5 U.S.C. § 5724a and its implementing regulations are relied upon, he still deserves total reimbursement. Plaintiff also asserts that his father never had an ownership interest in the property and was listed as an accommodation maker only. Moreover, plaintiff contends that rather than use the time of transfer notification to determine his interest in the property, the government should have used the time of settlement in determining his interest in the property.

Plaintiff's contention that the time of settlement should be used in determining his interest in the property is incorrect. Plaintiff believes that if the IRS had looked at the time of settlement, plaintiff would have been fully reimbursed, since his father executed a gift deed to him and to his wife after the time of transfer notification, but before the time of settlement. Plaintiff cites *In the Matter of Alan Wood,* B–216205, 64 Comp.Gen. 299 (1985), in support of this contention. *Wood* dealt with an employee who held full title on his old residence with his wife at the time of his official transfer notification, but was divorced before the actual sale of the old residence. In that case, the employee only was reimbursed for half of the real property relocation expenses, because his wife was not a member of his immediate family at the time of the settlement. *Id.* Plaintiff relies upon this case, claiming that his property interest should have been assessed at the time of settlement. However, plaintiff fails to address later Comptroller General decisions, which further clarify the rules on cases in which the time of settlement is used to assess appropriate compensation. These later decisions have held that while an employee's interest may decrease due to circumstances occurring after the date of the official notification of transfer, the interest is at its maximum at the time of transfer notification, although it may be diminished by subsequent events, it may not be expanded. *See In the Matter of Glen A. Freeman,* B–254645, 1994 WL 77163 (C.G.) (1994); *In the Matter of William J. Fitzgerald,* B–222742, 66 Comp. Gen. 95 (1986). The language of 41 C.F.R. § 302–6.1(c) is clear and states that the interest in the property must exist prior to official notification of transfer. Because plaintiff's father was still on the deed at the time plaintiff received the official notice of his transfer, plaintiff and his wife possessed only a two-thirds interest in the property at the time of the official notification.

Plaintiff's contention that he is entitled to be fully reimbursed because his father was solely on the deed as an accommodation maker, without a true interest in the property, because his father paid no money towards the home or for the maintenance of the home, and because he informed both the IRS

and the GAO that his father was solely on the deed as an accommodation maker, is unpersuasive. Plaintiff's interpretation is unsubstantiated by the language of 41 C.F.R. § 302–6.1(c). Plaintiff concedes that because his father's name was on the deed, there is a presumption that when title is held jointly, each owner is liable for payment of the expenses. Plaintiff claims, however, that he rebutted that presumption by demonstrating that his father made no payments towards the residence. In support, plaintiff relies on *In the Matter of Thomas A. Fournier*, B–217825, 1985 WL 53066 (C.G.) (1985).

In the *Fournier* decision, the GAO found that although an individual, not a part of his immediate family, may have been added to the deed solely to obtain financing, "he does not specifically assert, or offer any evidence to establish, that in fact he paid all of the real estate expenses." *Id.* at 3. Therefore, the Comptroller General reasoned that he could not receive full compensation.

Plaintiff, in reliance on the *Fournier* reasoning, concludes that because he demonstrated that his father paid no money towards the residence and was on the deed solely to help plaintiff secure a loan, he should receive full compensation. Plaintiff's reliance on *Fournier*, however, is misplaced. More recent GAO authority disagrees with the reasoning of *Fournier*, and, instead, sets forth that under the statutory and regulatory provisions, when an employee holds title to a residence with individuals who are not members of the immediate family, he may be reimbursed only to the extent of his and his immediate family's proportional interest in the property. This rule applies notwithstanding the fact that the individual is solely on the deed as an accommodation maker and has no economic ties to the property. *See In the Matter William Burlington*, B–240638, (1990) (holding that although employee's non-dependent parents were on the deed to the residence solely as accommodation makers, the employee may only be reimbursed according to his proportional interest in the property); *In the Matter of Denise M. Wempe*, B–236769, 1990 WL 277834 (C.G.) (1990), (finding that although the employee's sister was placed on the deed in order to prevent probate and had no monetary interest in the property, the employee may only be reimbursed to the extent of her proportional interest in the property); *see also In the Matter of Ronni Lasher*, B–242400 (1991), (concluding that because an employee's nondependent parents were on her deed, although they were included only for the purpose of obtaining financing, there is a presumption that each party has an equal legal interest in the property, unless the deed clearly indicates otherwise).[9]

Furthermore, the court notes that plaintiff does not address the relocation service contract with AMC. That contract contained provisions which also are applicable here. The terms of the contract are consistent with those found in the applicable regulations. The Accounting and Billing Section of the contract terms, part B., states: "If title is held jointly with a person other than an immediate family member, the USSS [United States Secret Service][10] will pay only a pro rata share of the fee. The employee or other owner will be responsible for payment of the balance of the fee." Accordingly, pursuant to the AMC contract, plaintiff should not have expected full reimbursement because his father was on the deed, and he held title to the real property jointly with a person other than an immediate family member.

Plaintiff has failed to direct this court to any language in the applicable statute, regulations or the contract with AMC, demonstrating that plaintiff falls within the statu-

---

9. Plaintiff also asserts that since 41 C.F.R. § 302–6.1(c) was amended in 1994, and now provides a list of exceptions to the title requirements, including instances when an accommodation maker is on the lease, he is entitled to full reimbursement. Based on the provisions for the applicable year, however, the 1993 regulations make no allowances for those individuals on a deed solely as an accommodation maker. Because the 1994 provision was not in effect at the time the plaintiff relocated, the amendment does not apply to this case, and the plaintiff's argument is unfounded.

10. As noted above in footnote 2, the United States Secret Service is the original agency to contract with AMC, and the contract used by the IRS in the instant case is the same one, with the same provisions.

tory and regulatory provisions allowing for total reimbursement of relocation expenses for the sale of his real property. Because plaintiff's father was on the lease at the time of official transfer notification, plaintiff was only entitled to compensation for that portion of transfer expenses representing his proportional interest in the property as listed on the deed. Defendant's motion for summary judgment is **GRANTED.**

## CONCLUSION

After careful review of the record before this Court and the applicable law, the court concludes that the defendant has met its burden of proof on summary judgment regarding Count I, the remaining count of the complaint. The record demonstrates that the IRS acted within the applicable statutory and regulatory provisions when it determined the appropriate compensation due to the plaintiff. Count II has been found to be a request for declaratory relief and, therefore, outside the jurisdiction of this Court. Moreover, the court notes that plaintiff has failed to demonstrate that the Federal Travel Regulations, 41 C.F.R. § 302, are inconsistent with the statutes. For the reasons stated above, both defendant's motion for summary judgment on Count I and defendant's motion to dismiss Count II are, hereby, **GRANTED.** The Clerk of the Court is, hereby, directed to dismiss plaintiff's complaint and to enter judgment in accordance with this decision.

**IT IS SO ORDERED.**